IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| JULIUS KARL QUINCE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | CIVIL ACTION NO. 2:12cv247-TFM |
| ) | (WO) |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**

**I.  Introduction**

Plaintiff Julius Karl Quince ("Quince") applied for disability insurance benefits pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, alleging that he is unable to work because of a disability.  His application was denied at the initial administrative level.  The plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ").  Following the hearing, the ALJ concluded that the plaintiff was not under a "disability" as defined in the Social Security Act.  The ALJ, therefore, denied the plaintiff's claim for benefits.  The Appeals Council rejected a subsequent request for review.  The ALJ's decision consequently became the final decision of the Commissioner of Social Security ("Commissioner").[1]  *See  Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  Pursuant to 28 U.S.C. § 636(c), the parties have consented

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

to entry of final judgment by the United States Magistrate Judge. The case is now before the court for review pursuant to 42 U.S.C. §§ 405 (g) and 1631(c)(3). Based on the court's review of the record in this case and the parties' briefs, the court concludes that the Commissioner's decision should be affirmed.

## II.  Standard of Review

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . .

To make this determination,[2] the Commissioner employs a five-step, sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920.

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

---

[2] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

The standard of review of the Commissioner's decision is a limited one. This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A reviewing court may not look only to those parts of the record which supports the decision of the ALJ but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

### III. The Issues

**A. Introduction.**

Quince was 53 years old at the time of the hearing and is a high school graduate. (R.

---

[3] *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986) is a supplemental security income case (SSI). The same sequence applies to disability insurance benefits. Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See e.g. Ware v. Schweiker*, 651 F.2d 408 (5th Cir. 1981) (Unit A).

22, 27, 32.)  Quince has prior work experience as a tractor driver.  (R. 51.)  Quince alleges that he became disabled on January 15, 2006, due to chronic obstructive pulmonary disease (COPD), hypertension, degenerative disease in the left knee, headaches, and glaucoma.  (R. 14, 30.)  After the hearing, the ALJ found that Quince suffers from severe impairments of COPD and arthritis of the left knee, as well as non-severe impairments of glaucoma with normal vision, hypertension with no end organ damage, and depression with no more than mild limitations.  (R. 16.)  The ALJ found that Quince is unable to perform his past relevant work, but that he retains the residual functional capacity to perform medium work with limitations.  (R. 17.)  Testimony from a vocational expert led the ALJ to conclude that a significant number of jobs exist in the national economy that Quince could perform, including work as an assembler, sales attendant, and electronics worker.  (R. 23.)  Accordingly, the ALJ concluded that Quince is not disabled.  (*Id*.)

### B.  The Plaintiff's Claim.

Quince's sole claim is whether the Appeals Council erred by failing to remand his case to the ALJ on the basis of new evidence.  (Doc. No. 13, Pl's Br., p. 2.)

## IV. Discussion

Title 42 U.S.C. § 405(g), in part, permits courts to remand a case to the Social Security Administration for consideration of new evidence under certain circumstances.

*Ingram v. Comm'r of Soc. Sec. Adm.*, 496 F.3d 1253, 1261 (11th Cir. 2007). Quince asserts that he presented new evidence to the Appeals Council which was not considered by the ALJ. Because additional evidence was submitted and considered by the Appeals Council after the ALJ's decision, the proper inquiry is whether the Appeals Council's decision to deny benefits is supported by substantial evidence in the record as a whole. *See Ingram v. Astrue*, 496 F.3d 1252, 1262-64 (11th Cir. 2007). Quince argues that this case should be remanded to the Commissioner because the Appeals Council did not adequately consider the new evidence when denying his request for review.

Shortly after the ALJ rendered her June 22, 2010 decision, Quince provided additional medical records to the Commissioner. The evidence includes a previously omitted May 2009 record from Medical Outreach Ministries Family Health Center. (R. 409.) At that visit, Quince complained of chest discomfort, dizziness, and left knee pain. (*Id.*) A physician assessed uncontrolled hypertension, anxiety, knee pain, and COPD and adjusted his medication. (*Id.*) He also provided reports from a July 2009 pulmonary function test, indicating normal results. (R. 374-375.) The medical records include an October 2009 record from Institute for Total Eye Care, in which Quince complained of painful pressure around his eyes, a headache, and dizziness. (R. 368.) A physician noted that Quince's interocular pressure was stable. (*Id.*)

After the hearing before the ALJ, Quince continued to receive treatment for his conditions at Medical Outreach Ministries and Baptist Hospital. On June 9, 2010, Quince

returned to Medical Outreach Ministries complaining of chest pressure in the evenings, dizziness, and joint pain. (R. 407.) A physician questioned whether Quince's chest pain was heart-related or esophageal in origin, recommended Mylanta, and referred Quince for nuclear stress testing. (*Id*.) The physician also noted that Quince's hypertension control was satisfactory and that his COPD seemed stable. (*Id*.)

On June 30, 2010, Quince underwent a cardiac stress test at Baptist Medical Center. (R. 399, 410.) The radiologist's impression was a fixed inferior wall defect probably secondary to scar formation from a previous myocardial infarction with no reversible defects and an ejection fraction of 56% with infrabasilar hypokinesis (mild). (*Id*.)

On July 14, 2010, Quince returned to Medical Outreach Ministries complaining of right knee pain, headaches, and occasional chest discomfort. (R. 404.) The physician adjusted Quince's medication for hypertension, suggested Mylanta for the treatment of chest discomfort, prescribed Alphagan and Travatan for the treatment of glaucoma, and noted that his COPD was "satisfactory at present." (R. 404.) During a follow-up appointment on July 19, 2010, a physician noted that Quince's blood pressure as "much improved" and prescribed Clonidine, Micardis, Norvasc, and Hydrochlorothiazide. (R. 402.)

On September 9, 2010, Quince complained of continued chest pain, depression, and difficulty sleeping. (R. 422.) The physician found that Quince's hypertension was fairly controlled with medication, prescribed Lexapro and Elavil for depression, referred him to a cardiologist, and requested a heart catheterization for his complaints of chest pain. (*Id*.)

On September 15, 2010, at Baptist South Hospital, Dr. H. Forrest Flemming, a cardiologist, performed a heart catheterization on Quince. (R. 429.) Dr. Flemming found "normal left size and wall motion" and "mild coronary artery disease." (*Id.*)

On October 11, 2010, Quince returned to Medical Outreach Ministries with complaints of dizziness, blurry vision, occasional chest pain, and high blood pressure. (R. 420.) A physician assessed that Quince's chest pain "seems non-cardiac" and that the plaintiff had adequate control of his hypertension. (*Id.*)

On November 17, 2010, Quince presented to Medical Outreach Ministries, complaining that he "gets dizzy frequently – passed out briefly a few times" and chest pain three to four times a week. (R. 417.) The physician noted that Quince's blood pressure dropped from 104/80 to 90/70 upon standing, assessed postural hypotension, and adjusted his blood pressure medication. (*Id.*) During a follow-up appointment on December 1, 2010, Quince reported that he "still has some dizziness." (R. 415.) The physician recorded a drop in blood pressure upon standing, assessed postural dizziness, and discontinued his prescription for Hydrochlorothiazide. (*Id.*)

Quince argues that the new evidence supports a finding that his impairments and limitations were of greater severity than determined by the ALJ at the time of his decision. (Pl's Br., p. 7.) The Appeals Council considered the additional evidence and determined that the information did not provide a basis for changing the ALJ's decision. (R. 1, 4-5.) This court has reviewed the record in its entirety and concludes that the Commissioner's decision

is supported by substantial evidence.  The new medical records indicate that Quince had subjective complaints of dizziness, chest pain, glaucoma, and high blood pressure.  However, Quince's subjective complaints are not supported by the objective medical evidence.  For example, the evidence before the Appeals Council demonstrates that, despite Quince's complaints of eye pressure, an opthalmologist found that his intraocular pressure was stable. (R. 386.)  In addition, medical personnel noted that his COPD was stable and satisfactory and that his pulmonary function is normal.  (R. 374-75, 404, 407.)  A physician also assessed that Quince's chest pain was esophageal, rather than cardiac, in origin.  (R. 404, 407, 420, 422.) His physician also assessed that Quince's dizziness was due to a drop in blood pressure upon changing position and adjusted his hypertension medication.  (R. 415, 417.)

The court notes that, although the objective medical evidence indicates that Quince has a "fixed interior wall defect probably secondary to scar formation from previous myocardial infarction," he did not allege disability on the basis of a heart condition during the Social Security proceedings.  (R. 399.)  More importantly, the records indicate that no reversible defects are noted and that Quince's heart is able to pump blood at a normal volume.  (*Id.*)   In addition, a cardiologist determined that Quince has no more than mild coronary artery disease.  (R. 427-29.)

Upon consideration of the evidence as a whole, including the new evidence provided to the Appeals Council, the court concludes that the Commissioner's determination that Quince could perform medium work with limitations during the relevant time period is

supported by substantial evidence.

## V. Conclusion

The court has carefully and independently reviewed the record and concludes that substantial evidence supports the Commissioner's conclusion that plaintiff is not disabled. Thus, the court concludes that the decision of the Commissioner is supported by substantial evidence and is due to be affirmed.

A separate order will be entered.

DONE this 4th day of January, 2013.

/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE